UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

OMAYRA GONZALEZ & NELSON ROSARIO,

                                 Plaintiffs,

                -against-

THE CITY OF NEW YORK, SERGEANT COREY
DAILEY, shield # 425, DETECTIVE LYNN BROWN,
shield # 1171, DETECTIVE DENNIS ESTWICK, shield #
02592, DETECTIVE JOHN HALL, tax # 936725,
DETECTIVE HOIPING LEE, shield # 2882, DETECTIVE
AARON JOHNSON, shield # 2446,

                                 Defendants.

---------------------------------------------------------------------- x

**FIRST AMENDED
COMPLAINT**

10 Civ. 9039 (PKC)

<u>Jury Trial Demanded</u>

## PRELIMINARY STATEMENT

       1.     Plaintiffs bring this civil rights action against the City of New York and

several members of the New York City Police Department ("NYPD") who were employed in

Narcotics Borough Manhattan South ("Manhattan South Narcotics") on September 9, 2009.

Plaintiffs allege that, on September 9, 2009, in Manhattan, defendants violated their rights under

42 U.S.C. § 1983, the Fourth and Sixth Amendments to the United States Constitution and New

York State law.  Plaintiff Omayra Gonzales alleges that defendants falsely arrested her for

possession and sale of a controlled substance, used unreasonable force on her, illegally strip

searched her, made false allegations about her to prosecutors and maliciously prosecuted her.

Plaintiff Nelson Rosario alleges that defendants used unreasonable force on him, illegally strip

searched him and made false allegations to prosecutors that he had sold a controlled substance.

On October 14, 2009, the false criminal charges filed against Gonzalez were dismissed when a

Grand Jury declined to indict her.  Rosario pled guilty to misdemeanor possession of a controlled

substance in 2011.  Plaintiffs seek compensatory and punitive damages, attorney's fees and costs and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3.      Plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide their New York state law claims of false arrest, assault, battery, conversion and malicious prosecution which form part of the same case and controversy as their federal claims under Article III of the United States Constitution.

4.      With respect to plaintiffs' state law claims, a notice of claim was duly filed with the City of New York within 30 days of the incident at issue, more than 30 days have elapsed since such filing and the City has not offered to settle plaintiffs' state law claims.

## PARTIES

5.      Plaintiffs are residents of the State of New York who live in Manhattan.

6.      The City of New York is a municipal corporation organized under the laws of the State of New York.

7.      Sergeant Corey Dailey, Detective Lynn Brown, Detective Dennis Estwick, Detective John Hall, Detective Hoiping Lee and Detective Aaron Johnson are members of the NYPD employed in Manhattan South Narcotics.  Defendants were acting under color of state law and in their capacities as members of the NYPD at all relevant times.  Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to

protect plaintiffs from unconstitutional conduct.  The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

8.      During the afternoon of September 9, 2009, Omayra Gonzalez and Nelson Rosario were driving in Gonzalez's car with their dog, a Yorkshire Terrier, after leaving Ace Hardware Store located on 1st Avenue between 3rd and 4th Streets in Manhattan.

9.      At all relevant times, plaintiffs did not commit a crime, they were not wanted for a crime and no law enforcement officer observed them acting in a manner which gave rise to probable cause.

10.     An unmarked police van tailgated plaintiffs' vehicle causing plaintiffs to pull over and stop their car on Avenue B between 9th and 10th Streets.

11.     The police van then parked two vehicles in front of plaintiffs' car.

12      A tall, male, black officer of Manhattan South Narcotics, possibly Dennis Estwick, exited the van.

13.     The officer told plaintiffs to tell him "where the drugs are" or else he was going to take plaintiffs to "jail," seize their dog and confiscate the car.

14.     Plaintiffs told the officer that they were not in possession of any drugs.

15.     At this time, a second unmarked van arrived on the scene containing Sergeant Corey Dailey, Detective John Hall, Detective Lynn Brown and possibly Detective Hoiping Lee and Detective Aaron Johnson.

16.     The male black officer handcuffed Rosario excessively tight, causing pain and bruising, searched him and found nothing illegal on him, including illegal drugs.

3

17.     Detective Brown handcuffed Gonzalez excessively tight, causing pain and bruising, searched her and found nothing illegal on her, including illegal drugs.

18.     Plaintiffs were taken by van to the PSA 4 Precinct.

19.     During the trip to the precinct, Detective Hall walked into the rear of the van and handcuffed Rosario tighter each time he complained about the pain from the tight cuffs.

20.     Shortly after plaintiffs arrived at the precinct, Detective Brown strip searched Gonzalez in a bathroom by ordering her to strip nude.

21.     During the search, Brown touched Gonzalez's breasts.

22.     Brown found nothing illegal on Gonzalez including illegal drugs.

23.     Inside the precinct, Detective Hall strip searched Rosario two times by ordering him to strip nude, squat, bend over, spread his buttocks and cough.

24.     Hall found nothing illegal on Rosario including illegal drugs.

25.     The strip searches of plaintiffs were illegal because no officer had reasonable suspicion to believe that they were hiding illegal items under their clothes.

26.     The other defendants knew that plaintiffs were going to be illegally strip searched, but they failed to intervene to protect them by, for example, reporting the matter to a supervisor.

27.     While plaintiffs were confined in cells after the strip searches, Detective Estwick, plaintiffs' designated "arresting officer," misrepresented in police reports that plaintiffs had possessed and sold illegal narcotics.

28.     The other defendants knew that Detective Estwick was creating police reports containing these false allegations about plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to a supervisor.

4

29.     In the evening, officers took plaintiffs to Manhattan Central Booking.

30.     While being admitted into Central Booking, two black, female officers strip searched Gonzalez by ordering her to remove her shirt, expose her breasts, remove her pants and pull down her underwear.

31.     While plaintiffs were confined in Manhattan Central Booking, Detective Estwick misrepresented to the New York County District Attorney's Office that plaintiffs had possessed and sold illegal narcotics.

32.     The other officers involved in the arrests of plaintiffs knew that Detective Estwick was commencing a false prosecution against plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to an NYPD supervisor or to the District Attorney's Office.

33.     Detective Estwick commenced the bogus felony prosecution against plaintiffs by swearing to the accuracy of a criminal court complaint that contained the false allegations.

34.     Defendants' purposes in commencing a bogus prosecution against plaintiffs was to have plaintiffs convicted of and punished for crimes they did not commit, to obtain overtime compensation and to improve Manhattan South Narcotics' arrest statistics.

35.     On September 10, 2009, plaintiffs were arraigned in Criminal Court, New York County, on felony narcotics charges.  Gonzalez was arraigned in the afternoon and Rosario was arraigned in the evening.

36.     Rosario posted bail at his arraignment and Gonzalez was released on her own recognizance.

37.     After Gonzalez was released, she learned that defendants had stolen her gold bracelet worth approximately $200, and caused extensive damage to the interior of her car. To date, plaintiffs have spent $2,400 to repair the car and additional repairs are needed.

38.     In October 2009, Gonzalez testified in the Grand Jury.

39.     The Grand Jury declined to indict Gonzalez.

40.     Rosario hired lawyer Kenneth Linn to defend him for $6,000.

41.     Rosario pled guilty to misdemeanor possession of a controlled substance in 2011.

42.     Plaintiffs suffered damage as a result of defendants' actions.  Plaintiffs were deprived of their liberty during their incarceration and while the criminal charges were pending and suffered emotional distress, mental anguish, fear, anxiety, embarrassment and pain and injuries.  Moreover, Rosario paid $6,000 to a criminal defense attorney and Gonzalez's bracelet was stolen and car damaged as described herein.

## FIRST CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

43.     Plaintiffs repeat the foregoing allegations.

44.     At all relevant times, including September 9, 2009, plaintiff Gonzalez did not commit a crime or violation, she was not wanted for a crime and no law enforcement officer observed her acting in a manner which gave rise to probable cause.

45.     Despite Gonzalez's innocence, the defendants arrested her or failed to intervene to prevent her false arrest.

46.     Accordingly, defendants are liable to Gonzalez under the Fourth Amendment for false arrest.

6

## SECOND CLAIM

### (FALSE ARREST UNDER STATE LAW)

47.     Plaintiffs repeat the foregoing allegations.

48.     At all relevant times, including September 9, 2009, plaintiff Gonzalez did not commit a crime or violation, she was not wanted for a crime and no law enforcement officer observed her acting in a manner which gave rise to probable cause.

49.     Despite Gonzalez's innocence, the defendants arrested her or failed to intervene to prevent her false arrest.

50.     Accordingly, defendants are liable to Gonzalez under New York state law for false arrest.

## THIRD CLAIM

### (UNREASONABLE FORCE UNDER FEDERAL LAW)

51.     Plaintiffs repeat the foregoing allegations.

52.     Defendant's use of force upon plaintiffs in the form of excessively tight handcuffs was objectively unreasonable and caused plaintiffs pain and injury.

53.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for using unreasonable force on them.

## FOURTH CLAIM

### (ILLEGAL STRIP SEARCH UNDER FEDERAL LAW)

54.     Plaintiffs repeat the foregoing allegations.

55.     Defendants' strip searches of plaintiffs or their failure to intervene to stop the searches were illegal because no officer had reasonable suspicion to believe that plaintiffs were hiding illegal items under their clothes.

7

56.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for illegally strip searching them.

## FIFTH CLAIM

### (ASSAULT UNDER STATE LAW)

57.     Plaintiffs repeat the foregoing allegations.

58.     Defendants' tight handcuffing, searches incident to arrest and strip searches of plaintiffs placed plaintiffs in fear of imminent harmful and offensive physical contacts which injured plaintiffs.

59.     Accordingly, defendants are liable to plaintiffs under New York state law for assault.

## SIXTH CLAIM

### (BATTERY UNDER STATE LAW)

60.     Plaintiffs repeat the foregoing allegations.

61.     Defendants' tight handcuffing, searches incident to arrest and strip searches of plaintiffs were offensive and nonconsensual physical contacts which injured plaintiffs.

62.     Accordingly, defendants are liable to plaintiffs under New York state law for battery.

## SEVENTH CLAIM

### (FABRICATION OF EVIDENCE AND DENIAL OF A FAIR TRIAL)

63.     Plaintiffs repeat the foregoing allegations.

64.     Detective Estwick misrepresented to prosecutors that plaintiffs had committed a felony narcotics offense.

65.     The other defendants knew that Estwick was commencing a false prosecution against plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to an NYPD supervisor or to prosecutors.

66.     Defendants' false allegations resulted in plaintiffs being deprived of liberty because they were held in jail until their arraignments and were required to appear in court on several occasions subsequent to their arraignments.

67.     Accordingly, defendants are liable to plaintiffs under the Sixth Amendment for fabrication of evidence and denying plaintiffs a fair trial.

## EIGHTH CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

68.     Plaintiffs repeat the foregoing allegations.

69.     Defendants, through their affirmative actions or failure to intervene, were all personally involved in commencing a bogus prosecution against plaintiff Gonzalez which ultimately terminated in Gonzalez's favor.

70.     Defendants' motivation was to have Gonzalez convicted of and punished for crimes she did not commit, to obtain overtime compensation and to improve Manhattan South Narcotics' arrest statistics.

71.     The prosecution deprived Gonzalez of liberty because she was required to appear in court on several occasions after her arraignment.

72.     Accordingly, defendants are liable to Gonzalez under the Fourth Amendment for malicious prosecution.

## NINTH CLAIM

### (MALICIOUS PROSECUTION UNDER STATE LAW)

73.    Plaintiffs repeat the foregoing allegations.

74.    Defendants, through their affirmative actions or failure to intervene, were all personally involved in commencing a bogus prosecution against Gonzales which ultimately terminated in Gonzalez's favor.

75.    Defendants' motivation was to have Gonzalez convicted of and punished for crimes she did not commit, to obtain overtime compensation and to improve Manhattan South Narcotics' arrest statistics.

76.    Accordingly, defendants are liable to Gonzalez under the New York state law for malicious prosecution.

## TENTH CLAIM

### (CONVERSION)

77.    Plaintiffs repeat the foregoing allegations.

78.    Defendants, through their affirmative actions or failure to intervene, stole plaintiff Gonzalez's gold bracelet worth approximately $200, and caused extensive damage to the interior of her car.  To date, plaintiffs have spent $2,400 to repair the car and additional repairs are needed.

79.    Accordingly, defendants are liable to plaintiffs under New York state law for conversion.

## ELEVENTH CLAIM

### (STATE LAW RESPONDEAT SUPERIOR CLAIM AGAINST CITY OF NEW YORK)

80.    Plaintiffs repeat the foregoing allegations.

10

81.     Defendants were acting within the scope of their employment as New York City Police Officers when they falsely arrested and maliciously prosecuted Gonzalez, assaulted and battered Gonzalez and Rosario and converted Gonzalez's property.

82.     Accordingly, the City of New York is vicariously liable under New York state law for false arrest, assault, battery, malicious prosecution and conversion.

## TWELFTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

83.     Plaintiffs repeat the foregoing allegations.

84.     The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

85.     The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiffs.

86.     Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other narcotics officers are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.  In fact, several NYPD narcotics officers have been arrested and convicted of crimes relating to the making of false allegations about arrestees and for corruption.

87.     Defendant Estwick was sued for civil rights violations in *Jessica Ward v. City of New York, et al.*, 07 Civ. 4527 (S.D.N.Y.), which the City settled in 2008.

88.     Defendant Dailey was sued for civil rights violations in *Kelvin Cheek v. City of New York, et al.*, 02 Civ. 1170 (S.D.N.Y.), which the City settled in 2004; *Christopher Hald v. City of New York, et al.*, 08 Civ. 7896 (S.D.N.Y.), which the City settled in 2009; and

*Nelson Rosario and Omayra Gonzalez v. City of New York, et al.*, 10 Civ. 1277 (S.D.N.Y.), which the City settled in 2010.  Dailey is presently being sued for civil rights violations in *Johanna Socorro v. City of New York, et al.*, 08 Civ. 00134 (S.D.N.Y.).

        89.    Despite the above, the City exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the defendants and other narcotics officers and improperly retained and utilized them.

        90.    The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

        WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

        a.    Compensatory damages in an amount to be determined by a jury;

        b.    Punitive damages in an amount to be determined by a jury;

        c.    Attorney's fees and costs;

        d.    Such other and further relief as the Court may deem just and proper.

DATED:      May 17, 2011
              Brooklyn, New York

                       /s/

                       _____

                       RICHARD CARDINALE
                       Attorney at Law
                       26 Court Street, Suite 1815
                       Brooklyn, New York 11242
                       (718) 624-9391